Lawrence M. Winters and Chicago Title and Trust Company, Trustee, Appellants, v. Rose Polin, Appellee.

Gen. No. 41,509.

Opinion

filed April 14, 1941.

STEVENS & STEVENS, of Chicago, for appellants; GEORGE M. STEVENS and GEORGE M. STEVENS, JR., of counsel.

HAROLD A. HARRIS and BENJAMIN WEINBERG, both of Chicago, for appellee; BENJAMIN WEINBERG, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

This is a complaint seeking specific performance of a contract of sale. Plaintiff Winters and defendant entered into a contract on March 1, 1939, for the sale by plaintiff to her of the real property and building at 1244 Independence boulevard in Chicago; the contract consisted of two letters: defendant's letter, offering to buy, with $500 as earnest money to be returned if good title was not furnished on or before March 20, 1939; and plaintiff Winters' letter of acceptance, re-

citing that the total purchase price was $6,250, that $500 had been paid as earnest money and the balance of $5,750 to be paid to plaintiff upon delivery of a deed showing good title, free and clear of all liens and encumbrances, together with a Chicago Title and Trust Company title guaranty policy.

Plaintiffs filed a complaint asserting that they had fully complied with their contract and asked for a decree of specific performance on the part of defendant. Defendant answered that plaintiffs were unable at all times to tender a deed to the entire property by reason of the encroachment of two bay windows on the building referred to in the contract which extend over the south line of the premises on to the adjoining lot. Defendant also filed a counterclaim seeking the return of the $500 earnest money deposited by her and also compensation for her attorneys' fees and other expenses and costs incurred by reason of her reliance upon the terms of the contract.

After hearing evidence the chancellor ordered that plaintiffs' complaint be dismissed, and also the counterclaim, as being without equity. The order also provided that either party might file any action at law for relief against the other party growing out of the transaction.

The evidence showed that March 13, 1939, the Chicago Title & Trust Co. sent its letter of opinion to plaintiff Winters stating they were prepared to issue their guaranty policy, subject to the usual terms and conditions. The first of these conditions is subject to ''rights or claims of parties in possession not shown of record, and questions of survey.'' This letter was sent by Winters to the attorney for defendant.

Apparently a survey of the premises was then made by which it was shown that two bay windows, which were a permanent part of Winters' building, encroached on the adjacent lot to the south. The en-

croachment of one of these windows was 9.32 inches, and the other, 4.08 inches. These encroachments were noted in writing on the opinion letter of the Chicago Title & Trust Co., dated March 13, 1939.

Counsel for plaintiffs argue that these encroachments were immaterial defects and technical in their nature and will not be permitted to defeat a decree for specific performance. To this argument counsel for defendant cite a large number of cases dealing with encroachments of buildings from one inch to a foot or more. In all of these it was held that such encroachments on adjoining city land were not trivial and they clearly affected the marketability of the title so as to require dismissal of a complaint for specific performance. *Vassar Holding Co. v. Wuensch,* 100 N. J. Eq. 147; *Pasternack v. Alter,* 95 N. J. Eq. 377; *Sulk v. Tumulty,* 77 N. J. Eq. 97; *Hennig v. Smith,* 151 N. Y. S. 444; *Meadows v. Michel,* 135 App. Div. 213, 120 N. Y. S. 319 and 144 App. Div. 927, 130 N. Y. S. 57; *Snow v. Monk,* 81 App. Div. 206, 80 N. Y. S. 719; *Stevenson v. Fox,* 40 App. Div. 354, 57 N. Y. S. 1094; *Arnstein v. Burroughs,* 27 N. Y. S. 958.

A mandatory injunction requiring removal of walls encroaching on adjoining property was granted in *Antillia Protective Ass'n v. Wolfsohn,* 244 Ill. App. 71, where the encroachment was 8⅜ inches, and in *Pradelt v. Lewis,* 297 Ill. 374, 377, where it was about 4½ inches. In both of these cases the encroachments were held to be substantial and not trivial. There are also a number of cases in this State holding that a court of equity will not force on a purchaser a title which he may be required to engage in litigation to defend. *Hayne v. Fenton,* 321 Ill. 442, 447; *Baker v. Baker,* 284 Ill. 537, 540; *Smith v. Hunter,* 241 Ill. 514, 520. And it has also been held that specific performance should not be granted where title is doubtful. *Cobb v. Willrett,* 313 Ill. 92; *Weberpals v. Jenny,* 300 Ill. 145, 148. We

are of the opinion the encroachments in question were substantial and not trivial, and seriously affected the marketability of the title.

Upon receiving the letter of opinion from defendant's counsel noting the encroachments, plaintiff Winters procured from the Chicago Title & Trust Co. another letter, dated December 12, 1939, in which the encroachment of the bay windows in question over the south line was marked "waived." Subsequently defendant advised Winters that the property was not in as good shape as she thought it was and she would not be willing to pay $6,250 but would pay $5,000. Plaintiffs refused to accept this and thereupon filed this complaint seeking specific performance.

Plaintiffs state that defendant owned the adjoining property to the south of the premises in question and the encroachments of the bay windows were over her property. It is argued, therefore, that any rights she might have as the owner of the premises in question (1244 Independence boulevard) were merged in her ownership of the lot to the south. Although defendant's counsel present certain conveyances which it is claimed show she was not the owner of the adjoining property, by reason of a certain quitclaim deed of this to her brother-in-law, we are inclined to hold she was the real owner of the adjoining property.

But we are also of the opinion this does not affect the question presented. Assuming she owned the adjoining property and sold it, and the purchaser brought suit to have the encroachments on his property removed, if defendant owned the encroaching property how could she defend this action except by litigation? We know of no rule that compels a person, against his wishes, to buy a law suit.

How could there be any merger until defendant has the legal title to the encroaching property?—and she has not received any deed to this. In a merger the

whole title, legal as well as equitable, must unite in the same person.

Moreover, equity will not permit a merger which will result in injury and work injustice to the owner. Defendant was unaware of the encroaching bay windows before the survey. Plaintiffs cannot deliver title to these encroachments, and defendant, if she bought the property, would be compelled to pay the value of the encroached land or defend an action to remove the encroachments. As was said in *Dunkum v. Maceck Bldg. Corp.*, 256 N. Y. 275, 281: "The doctrine of merger has never been favored in equity and there the estates will be held to be separate when justice requires it and such was the intention of the parties. . . . Equity will prevent a merger whenever it will result in an injury to the owner and work injustice to him . . . ." There was no merger in the instant case.

Something is said in the brief for plaintiffs suggesting that a prescriptive right to the encroachments has accrued as they have existed for over 20 years. This point was not made in the points and authorities. The only evidence touching an encroachment for 20 years was the testimony of Joseph W. Schulman, which is not clear as to the dates, but tended to show he owned both properties for some 10 years prior to 1930, so there was no adverse encroachment for a period of 20 years. Moreover, there is no evidence that either defendant, Schulman or any other owner of either of the properties had any knowledge of the encroachment during 20 years. However, this at most only suggests how defendant might present a defense to any claim by an owner of the adjacent lot on the south, and as we have said, defendant was not bound to be subjected to the chances of litigation.

It is said plaintiffs agreed only to furnish defendant a guaranty policy guaranteeing title to the property. The subject matter of the contracts of purchase and

sale was "1244 Independence Boulevard" and the policy proposed did not guarantee all of this property. It did not guarantee that part which encroached on the adjoining lot. In fact, Mr. Bilger, who describes himself as title officer for the Chicago Title and Trust Co., and whose name is attached to the "waiver" to the objection of the encroachments, testified that the policy which his company would issue would not guarantee questions of survey; that if defendant were to accept this policy and sustain a loss with reference to the encroachments in question, she would not have recourse to the Chicago Title and Trust Co. under the terms of the guaranty policy. This was confirmed by the testimony of George B. Allen, a title attorney for the Chicago Title and Trust Co. and so employed for 21 years. In answer to the question as to whether, if defendant should sustain a loss by reason of the encroachments referred to, she could have recourse to the Chicago Title and Trust Co., he answered, "No, she would not." In the face of this situation, where the officials of the guaranty company state their policy did not cover any loss by reason of the encroachments, by what equitable principles was defendant bound to take the property, subject to possible law suits and losses?

It might be noted that although the officials of the guaranty company disclaimed any liability for losses occasioned by the encroachments, the objection to them which was called to their attention by letter was not waived by the company until three days after this suit was filed. The sufficiency of the guaranty policy is to be determined by the date fixed by the contract for closing the deal and not some time subsequent to the filing of suit for specific performance.

Having in mind the well-established maxim that equity will not compel one to buy a law suit, upon the record before us we are of the opinion the chancellor

properly ordered the dismissal of plaintiffs' suit for want of equity.

Defendant has filed notice of a cross appeal from the action of the trial court in dismissing her counterclaim and in refusing to award her costs. We are of the opinion this was error. By the terms of the contract of purchase and sale the earnest money deposited of $500 was to be returned to defendant, provided a guaranty policy showing good and sufficient title to the property was not furnished. As we have seen, the policy did not cover that part of the building encroaching on the adjoining lot. There was testimony that defendant had incurred costs and expenses incident to this transaction and litigation, but we find no evidence to support the reasonableness of these costs.

The order of dismissal was without prejudice to either party to bring any action at law against the other for relief growing out of the transactions and relations of the parties to the suit. We affirm that portion of the decree which dismissed the complaint as without equity. The order as to the counterclaim is reversed and the cause is remanded to the circuit court with directions to grant defendant such relief as the facts require.

*Affirmed in part and reversed in part and remanded with directions.*

MATCHETT, J., concurs.

MR. PRESIDING JUSTICE O'CONNOR specially concurring: I think defendant should be awarded the $500 and court costs and nothing more.