JON L. NELSON *et al.*, Plaintiffs and Counterdefendants-Appellants, v. WALTER E. ANDERSON *et al.*, Defendants and Counterplaintiffs-Appellees.

Fifth District    No. 5—96—0350

Opinion filed February 21, 1997.

John J. Johnston, of Dixon & Johnston, of Belleville, for appellants.

Patrick M. Flynn, of Flynn & Guymon, of Belleville, for appellees.

JUSTICE MAAG delivered the opinion of the court:

In this real estate contract action, summary judgment was granted in favor of the buyers on the ground that the sellers had not provided merchantable title. The sellers appeal.

On April 17, 1993, plaintiffs Jon and Anne Nelson (sellers) contracted to sell their home to defendants Walter and Shelly Anderson (buyers). The contract required buyers to pay an earnest money deposit of $1,500, with the balance of the purchase price to be paid on delivery of a warranty deed conveying a merchantable title, free and clear of all encumbrances, except those mentioned in the contract. The contract provided for closing within 30 days of signing, though the closing date was subsequently extended to June 30, 1993, by written agreement of the parties.

The contract further provided that sellers would employ a title insurance company to issue a report of title; buyers had 10 days from the receipt of the title report to voice objections, and sellers then had 90 days in which to satisfy buyers' objections.

The title report issued to the buyers by Chicago Title Insurance Company in early June 1993 indicated that the house was positioned less than 10 feet from the north lot line, in violation of an applicable setback covenant. Specifically, the recorded subdivision plat to which the instant property belonged contained a covenant prohibiting a building or any part of a building on any residential lot from being positioned less than 10 feet from the property lines of the adjoining owners. The record reveals that sellers' property was only 4.7 feet

from the lot's north boundary line, in violation of the covenant. Buyers made a specific, timely objection based on the violation.

Sellers responded by obtaining written assurances from the title company that, for an additional fee, it would insure over the building line exception at issue. Buyers then indicated that they were not satisfied with the title company's assurances and remained specifically concerned with the title company's guarantee to issue policies to any future buyers of the property. This prompted additional correspondence from the title company, in which it expressly assured that it would insure over the building line exception in the future for subsequent purchasers.

Buyers remained dissatisfied with the condition of the title and refused to close by the closing date. Buyers subsequently purchased another piece of property. Sellers ultimately sold their property at a lower purchase price.

Buyers filed suit to recover their earnest money deposit, while sellers sued for damages. The cases were consolidated by the St. Clair County circuit court. Each party filed a motion for summary judgment. The trial court granted buyers' motion, reasoning that sellers had breached the real estate contract by failing to deliver merchantable title.

On appeal, sellers argue:

(1) They complied with the terms of the contract by responding to the purchasers' objections to the title insurance commitment in a timely fashion; and

(2) The trial court erred in finding that title to the property was not merchantable because of the building line violation.

■ When reviewing a trial court's grant of summary judgment, the issue before the appellate court is whether the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. If the court of review determines that a genuine issue of material fact exists, then the entry of summary judgment must be overturned. *Jewish Hospital v. Boatmen's National Bank*, 261 Ill. App. 3d 750, 754-55, 633 N.E.2d 1267, 1272 (1994).

■ It is well settled in Illinois that merchantable title is not perfect title but, rather, title reasonably secure against the hazard, annoyance, and expense of future litigation. *Sinks v. Karleskint*, 130 Ill. App. 3d 527, 529, 474 N.E.2d 767, 769 (1985); 35 Ill. L. & Prac. *Vendor & Purchaser* § 93, at 506 (1958), citing *Farmers & Merchants Bank v. Holland*, 309 Ill. App. 193, 32 N.E.2d 987 (1941), and *Firebaugh v. Wittenberg*, 309 Ill. 536, 141 N.E. 379 (1923). Our supreme court has further recognized that merchantable title is that which a

reasonable person will accept as not subject to a doubt or cloud that would affect its market value. *Firebaugh v. Wittenberg*, 309 Ill. 536, 541, 141 N.E. 379 (1923); *Stevens v. Wilson*, 86 Ill. App. 3d 1047, 1053, 408 N.E.2d 496, 502 (1980). The issue of whether title to property is merchantable is a question of law for the court. *Radovanov v. Land Title Co. of America, Inc.*, 189 Ill. App. 3d 433, 545 N.E.2d 351 (1989).

■ Here, sellers tendered a title that was encumbered by the violation of a restrictive covenant contained in the subdivision plat. The subdivision plat was recorded, and the covenants therein run with the land to bind the deeds of each lot in the subdivision. The violation of such a covenant gives every lot owner in the subdivision the right to sue to enforce the covenant. Moreover, the encumbrance and accompanying risk of litigation undoubtedly affect the market value of the property. We need not discuss the degree of risk of litigation posed nor the magnitude of the decrease in market value caused by the title defect. We simply find that the title at issue was clouded by the violation of a restrictive covenant such that a reasonable person could fear both the threat of future litigation and an unfavorable effect on the market value of the property. We deem such title to be unmerchantable.

■ Sellers further contend that even if the title defect initially rendered their title unmerchantable, they nonetheless complied with the terms of the contract by remedying buyers' objections in a timely fashion. We disagree.

At no time before closing did sellers cure the encumbrance. Although sellers were able to obtain additional assurances from the title insurance company indicating that it would insure future purchasers despite the defect, such assurances did nothing to cure the encumbrance on the title. The availability of insurance to cover future litigation of a title defect might reasonably persuade a buyer to tolerate the potential risks of such a transaction voluntarily. However, the court will not compel a skeptical purchaser to close on the deal. Even if sellers' offered cure would effectively indemnify buyers for any future litigation costs suffered as a result of the title encumbrance, buyers did not originally bargain for such a tumultuous scenario when they signed the real estate contract. The law has long recognized that a buyer cannot be compelled to buy a lawsuit. *May v. Nyman*, 3 Ill. App. 3d 580, 278 N.E.2d 97 (1972); *Winters v. Polin*, 309 Ill. App. 458, 33 N.E.2d 497 (1941).

In the instant case, buyers bargained for a merchantable, unencumbered title. At the time of closing, sellers' title still contained the encumbrance, making it unmerchantable. Buyers were therefore justified in refusing to close on the contract.

710

For the foregoing reasons, the order of the circuit court granting defendants' motion for summary judgment is affirmed.

Affirmed.

HOPKINS and WELCH, JJ., concur.